**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **MICHAEL GRAVES,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 1:11-CV-00548 LY** |
| **KATHY LYNN GASKAMP, PATRICK** | § | |
| **SCOTT BALLARD, NOE &** | § | |
| **BALLARD, PLLC, and WASHINGTON** | § | |
| **COUNTY,** | § | |
| **Defendants.** | § | **JURY TRIAL REQUESTED** |

---

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST DEFENDANT KATHY LYNN GASKAMP GRAVES**

---

Plaintiff Michael Graves asks the Court to render partial summary judgment against Defendant Kathy Lynn Gaskamp Graves, as authorized by Federal Rule of Civil Procedure 56.

### A. INTRODUCTION

1.     Plaintiff Michael Graves brought suit against Defendant Kathy Lynn Gaskamp Graves ("Kathy Graves") asserting claims for breach of agreement; malicious criminal prosecution; violation of Plaintiff's constitutional and civil rights, and due process protections, afforded by the Fourth and Fourteenth Amendments of the Constitution of the United States, and in violation of 42 U.S.C. § 1983; and conspiracy to commit malicious prosecution and to violate Plaintiff's constitutional rights.  Plaintiff's Original Complaint was filed on June 15, 2011, in the Southern District of Texas.  [Doc. #1, Southern District].  By Order dated June 27, 2011, this case was transferred to the Western District of Texas, Austin Division.  [Doc. #5, Southern District].

2.     Sometime at the end of August of 2011 (the filing date is believed to be around August 30, 2011), Kathy Graves filed her Answer to the Complaint, along with what was styled a

Compulsory Counterclaim, and a document entitled "Plaintiff's Original Complaint."  In these documents, Kathy Graves purports to bring claims against Plaintiff, Washington County, and a number of third parties.  It is believed that service was not attempted or accomplished concerning any of the third parties.  By Order dated October 14, 2011, Kathy Graves' filings were docketed as an answer, counterclaim and cross-claim.  [Doc. 27 and 28, respectively].  It does not appear that Kathy Graves asserted any affirmative defenses to the claims brought by Plaintiff.

3.     Plaintiff files this motion for partial summary judgment on his claims for breach of contract and malicious criminal prosecution.  Summary judgment should be granted in this case because the summary-judgment evidence establishes all elements of Plaintiff's claims as a matter of law.

## B. STATEMENT OF FACTS

4.     This court has jurisdiction over this action under 28 U.S.C. § 1343(a) (3) for a violation of constitutional rights as provided in 42 U.S.C. § 1983.  Plaintiff asserts a claim against Kathy Graves for breach of agreement.  Plaintiff also asserts a claim for malicious prosecution against Kathy Graves.  Plaintiff further asserts a federal claim against Defendant Kathy Graves based on a violation of civil rights pursuant to 42 U.S.C. § 1983.  Plaintiff seeks monetary damages as well as attorney fees and costs pursuant to 42 U.S.C. § 1988, and pursuant to Chapter 38 of the Texas Civil Practices and Remedies Code.

5.     The core facts applicable to the claims against Kathy Graves are as follow:  Plaintiff Michael Graves was and is the adoptive father of the minor child ("NJG").  Kathy Graves was **never** the biological mother or adoptive mother of NJG.  The adoption order reflects that Michael Graves was and is the only adoptive parent of NJG.  *See* Exhibit 1; *see* Exhibit 36 (RFA Nos. 4 and 5).  Michael Graves filed for divorce from Kathy Graves, and on December 6, 2007,

obtained a Temporary Restraining Order against her.  *See* Exhibit 2.  Since the minor child was not a product of the marriage (*see* Exhibit 36, RFA Nos. 4 and 10), the divorce filing was properly made in the County where Plaintiff resided (Washington County) even though another Court (in Harris County, where the adoption occurred) may have had exclusive continuing jurisdiction over the minor child NJG.  In the TRO issued December 6, 2007, the Washington County Court presiding over the divorce initially (and correctly) ruled that there was no child of the marriage.  *See* Exhibit 2.  This finding is now confirmed through Requests for Admissions that are deemed admitted against Kathy Graves.  *See* Exhibit 36 (RFA's Nos. 1-5, 10).  It was at this point in time where the malicious events began.

6.    Kathy Graves, represented by Scott Ballard, filed a Counterpetition for divorce **falsely asserting** that the minor child NJG was a child of the marriage, and that Kathy Graves was her parent.  *See* Exhibit 3, paragraph 9.  This false pleading was followed by Ballard <u>falsely representing</u> to the Texas Department of State Health Services that Kathy Graves was the "adoptive mother" of the minor child.  *See* Exhibit 4 (page 2, box 6).[1]  Scott Ballard had personal "connections" and both personal and professional relationships with both the County Court Judge Matthew Reue, as well as the Washington County Attorney (Julie Renken) and the Washington County District Attorney, Bill Parham.  *See* Exhibit 36 (RFA No. 19).  While representing Kathy Graves in this divorce proceeding, Ballard was appointed by Judge Reue to provide indigent representation to persons in his Court, and received a monthly payment for this role.  *See* Exhibit 5.  Washington County paid either Ballard or his partner, Russell Noe, for

---

[1] This filing is particularly disturbing for the reason that all of the adoption records and filings were ordered sealed.  *See* Exhibit 1, page 4, paragraph concerning "Sealing Files."

Ballard's services.  *See* Ex 6.[2]  Ballard previously worked for Washington County Attorney Julie Renken, and was personal friends (at the time) with Washington County District Attorney Bill Parham.  *See* Exhibit 36 (RFA No. 19).  Ballard used those connections, and abused official legal processes, to gain leverage and strategic advantages against Michael Graves while representing Kathy Graves.  *See* Exhibit 36 (RFA Nos. 19, 20 and 21).

7.    Ballard next filed a Motion for Aditional (Sic) Temporary Orders, asserting that Kathy Graves was the mother of the minor child NJG, and attached a <u>knowingly false</u>, erroneously-obtained birth certificate of the minor child NJG.  *See* Exhibit 7; *see* Exhibit 36 (RFA Nos. 5 and 10).  The false birth certificate was obtained by Kathy Graves using a false "Certificate of Adoption" that she sent in to the Texas Department of Health to obtain the false birth certificate. *See* Exhibit 8.  The trial court Judge was presented with the adoption order reflecting ***<u>only Michael Graves</u>*** as the adoptive parent (*See* Exhibit 1).  Despite the lack of any standing or proper pleading[3] by Kathy Graves to obtain any custody or possession rights to the minor child NJG, a temporary orders hearing took place on July 1, 2008.[4]  One of the core matters at issue

---

[2] Evidence of this nature shows directly or by inference the connection that Scott Ballard had with the divorce court judge, and that he also had business dealings and was "on the payroll" of Washington County.

[3] The false pleading filed by Ballard on behalf of Kathy Graves claiming that Kathy was the "mother" of the minor child was ultimately abandoned.

[4] *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 2064, 147 L.Ed.2d 49 (2000), makes clear that "[t]he Due Process Clause does not permit a State to infringe on the fundamental rights of parents to make childrearing decisions simply because a state judge believes a 'better' decision could be made."  *Id.*  "Encompassed within the well-established fundamental right of parents to raise their children is the right to determine with whom their children should associate."  *Id.*, 530 U.S. at 79, 120 S.Ct. at 2067 (Souter, J., concurring).  *See also In re C.T.G.*, 179 P.3d 213, 224 (Colorado 2007) (applying the *Troxel* Due Process requirement to a step/psychological parent's request to access a child).  Texas Courts have likewise held that a "non-parent" conservator must show that a "serious and immediate question concerning the children's welfare exists if custody of the child is given to the parent over the non-parent; and such a showing requires "proof of an imminent danger" to the child's "physical or emotional well-being, or, stated another way, a dire

was temporary custody/possession over NJG.  The July 1, 2008, hearing lasted for hours, and took place with multiple recesses during which the Court took up other matters.  *See* Exhibit 38 (page marked as MG 307, lines 3-4).   During the hearing, many improprieties occurred, including the presiding trial Judge (Matthew Reue) offering to purchase, and talking about his purchase price for, some of the community property from Michael Graves.[5]

8.   Judge Reue, whose verbal statements are difficult to understand due to a speech impediment, verbally made a number of statements about possession of the minor child NJG. Judge Reue disregarded the fact that Kathy Graves was neither the biological or adoptive parent of the minor child NJG; disregarded the false pleadings and filings made by Kathy Graves and Scott Ballard that the minor child was a product of the marriage (which false pleading injected child custody into the proceedings improperly); and disregarded clear legal precedent that Kathy Graves had no standing to claim entitlement to possession or custody of the minor child.[6]  The dates and times for possession were changed, and altered, and re-stated many times such that it was difficult to follow Judge Reue's pronouncements.  During the hearing, Plaintiff's attorney requested multiple times to be provided a copy of some form of docket sheet notation, but was told that the pronouncements would not be written up at that time.  The trial judge noted that his pronouncements were to be set forth in temporary orders "to be submitted."  *See* Exhibit 9, second page, 2nd to last sentence.  Kathy Graves' attorney, Scott Ballard, was to submit the

emergency" exists.  *See Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990), citing to *McElreath v. Stewart*, 545 S.W.2d 955, 958 (Tex. 1977) (orig. proceeding).

[5] *See, e.g.*, July 1, 2008, hearing transcript (Exhibit 38), pages beginning at page marked MG 405, and referring to page 158 noted on right side, referencing lines 18-19; page 159 line 23 to page 161, line 25.

[6] See, *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 2064, 147 L.Ed.2d 49 (2000); *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990); *McElreath v. Stewart*, 545 S.W.2d 955, 958 (Tex. 1977) (orig. proceeding); and *In re de Filippi*, 235 S.W.3d 319, 324 (Tex. App.—San Antonio 2007, orig. proceeding).

proposed temporary orders to the Court.  **At no time prior to July 22, 2008, were the temporary orders submitted to the Court, and consequently were not in existence**.  *See* Exhibit 10.  The proposed temporary orders were submitted on July 22, 2008, and signed on that day. *Id*.

9.   Michael Graves, who has a hearing impediment,[7] and who could not hear Judge Reue's oral pronouncements as to dates and times of possession of the minor child NJG at the July 1, 2008, hearing, relied on his attorney's notes and directives concerning when Michael Graves was to have possession of his child.  *See* Exhibit 12 (page 7, third line from top).  Michael Graves fully intended to comply with the trial court's pronouncements as to possession of the child, and was awaiting an express, signed order that could be appealed.  Unfortunately, as late as July 22, 2008, there did not exist any express, signed orders from the Court, and there did not exist a transcript of the July 1, 2008, hearing.  *See* Exhibit13 [transcript of 7-22-2008 hearing, page 10, lines 1-4 (trial judge repeats "there was no written order"); page 16, lines 23-24 (trial judge states "[u]nfortunately, I don't have the benefit of the transcript either.")].

10.   On Friday, July 18, 2008, Plaintiff's attorney, Ben Eustachon, notified Plaintiff that he was to have possession of his minor child beginning that evening.  Michael Graves called Kathy Graves to inquire about the time of exchange of the minor child, at which time Kathy Graves relayed:  "F*** you, you bastard, you're never getting her back."  Alarmed by this statement, Michael Graves first contacted his attorney to inquire about who had the right to possession of the minor child, and then contacted Washington County law enforcement and relayed this information to Washington County Sheriff's deputy, Shane Ray, when he came to Mr. Graves' house.  Deputy Ray spoke with attorney Ben Eustachon, who stated to the deputy that he had an

---

[7] *See* Exhibit 11, affidavits reflecting Mr. Graves' loss of hearing.

order that reflected Mr. Graves was to have the minor child beginning on July 18, 2008.  *See* Exhibit 14 [Washington Co. Sheriff's Office Detail, 2nd page, 1st paragraph]; *see* Exhibit 26.  The Sheriff's personnel then took over what was to happen next.

11.   The only existing, signed Order from any Court prior to and on July 18, 2008, through July 21, 2008, was the adoption order granting custody and possession of the minor child NJG to Michael Graves.  *See* Exhibit 1.  A copy of this Order was provided to Deputy Ray.  According to the Sheriff's Office's records, the Washington County Sheriff's Office employees contacted Washington County employee (and assistant District Attorney) Edna Hernandez who "advised that [Deputy Ray] should get a warrant for arrest [of Kathy Graves] for interference with child custody…"  *See* Exhibit 14, second page, third paragraph.  Washington County Justice of the Peace, Roy May, signed the warrant, and Kathy Graves was arrested, with the minor child turned over to Plaintiff.  All of these actions were done by Washington County employees/personnel, presumably based on the lack of a signed order contradicting the adoption order (Exhibit 1).

12.   On Monday, July 1, 2008, less than three full days after the minor child NJG was given to Plaintiff, NJG was returned to Kathy Graves.  *See* Exhibit 1, page 10, line 24 to page 11, line 17.  Nonetheless, Scott Ballard (acting on behalf of Kathy Graves) filed a verified Motion for Issuance of Writ of Attachment (*see* Exhibit 15) wherein they falsely stated to the trial judge that "Plaintiff's "continued possession" of the child will create and is creating a serious, immediate threat to the child's physical and emotional well-being."  Scott Ballard had a half-hour *ex parte* meeting with Judge May, according to Ballard's time entries.  *See* Exhibit 16, second entry on 7-21-2008.  Ballard later met with Judge Reue, again *ex parte*.  *See* Exhibit 16, fifth entry on 7-21-2008; *see* Exhibit 21, page 38, line 21 to page 40, line 13; page 41, line 14 to page 42, line 4.  On July 22, 2008, a hearing took place (*see* Exhibit 13) wherein temporary orders were signed

(sometime after 2:55 PM) concerning possession/custody of the minor child (*see* Exhibit 10). These temporary orders are the only orders that contradict the adoption order granting custody and possession of the minor child NJG to Michael Graves.

13. On July 21, 2008, the Washington County District Attorney's office met with Washington County Sheriff's Investigator Floyd Mathis (an employee of Washington County) to investigate this matter. *See* Exhibit 14, fourth page. He pulled a copy of the divorce case docket sheet; spoke with Scott Ballard (who falsely stated to Mathis that a hearing on temporary orders took place on July 17, 2008, the day before the July 18, 2008, incidents at issue); took a statement from Kathy Graves; and (on August 19, 2008) received portions of a transcript of the July 1, 2008, temporary orders hearing from Travis Fleetwood.[8]  The case was then forwarded to the Washington County District Attorney's office for further prosecution.

14. Scott Ballard and Kathy Graves step up their efforts to initiate and facilitate multiple criminal prosecutions of Michael Graves, which criminal prosecutions Kathy Graves admitted were done to gain a strategic advantage over Michael Graves in the divorce proceedings. *See* Exhibit 36 (RFA Nos. 20 and 21). On July 24, 2008, (three days after his improper *ex parte* meetings with Judge Reue; and two days after getting temporary orders signed), Scott Ballard contacted Washington County Sheriff's office investigator Floyd Mathis providing information and making statements to further the criminal prosecution. *See* Exhibit 14 (at page 4, paragraph 3).[9]  That same day, Kathy Graves provided a statement to Investigator Mathis that was intended

---

[8] Travis Fleetwood was then a Washington County employee and assistant County Attorney, who appeared to be helping his soon-to-be partner Scott Ballard, but was taking these actions on County time while an employee of the County.   Sometime later, Fleetwood joined Ballard as a partner in the firm of Ballard & Fleetwood.

[9] Notably, there are no time entries on Ballard's time records (Exhibit 16) for many actions he took on Kathy Graves' behalf, including, e.g., the 7-22-2008 hearing; and the 9-4-2008 letter to the District Attorney.  It is also significant to note that the total amount of hours and charges for

to further the criminal charges.  *See* Exhibit 17.  On September 4, 2008, Scott Ballard sent a letter to Washington County District Attorney Renee Mueller.  *See* Exhibit 18.  In this letter, Ballard admitted to multiple conversations with investigator Floyd Mathis, and discussed criminal charges of both "perjury" and "interference with child custody."[10]  *See* Exhibit 18, first paragraph.  In this letter, Ballard then proceeds to facilitate and ensure that Kathy Graves can testify against Michael Graves to the Washington County Grand Jury in order to accomplish the criminal prosecution of Michael Graves.  Ballard then talks about the expectation that "Mr. Graves will be prosecuted to the fullest extent."  *See* Exhibit 18, second paragraph.  Ballard proceeds:  "I have assured Mrs. Graves that this case will be given your [Washington Co. District Attorney Renee Mueller's] full attention and that the right decision will be made in terms of investigating and prosecuting this case.  If I or Mrs. Graves can be of any assistance in this matter please don't hesitate to contact me directly."  *Id.*

15.  On October 6, 2008, Washington County District Attorney Renee Mueller sent a letter to Michael Graves concerning the presentation of this case to the grand jury.  *See* Exhibit 19.  The letter was sent to the wrong address, and delayed Plaintiff's receipt of it.  On October 21, 2008, Plaintiff's attorney sent a confirmation letter to District Attorney Renee Mueller confirming their telephone conference to defer grand jury action and to allow Michael Graves to present testimony to the grand jury.  *See* Exhibit 20.  On October 21, 2008, Scott Ballard prepared for the testimony to be presented to the grand jury concerning Michael Graves.  *See* Exhibit 16 (entry for 10-21-2008).  On October 22, 2008, Scott Ballard testified before the Grand Jury in an effort

_____

those hours do not add up to the total on the last page of the invoice, reflecting that Ballard deleted or did not produce records or time entries for many of his actions taken on behalf of Kathy Graves against Michael Graves.

[10] Ballard's statement about "perjury" charges against Michael Graves does not come up in any other efforts to prosecute Plaintiff except in Ballard's letter, and in Kathy Graves' email to Ballard and others referenced herein.

to ensure that Michael Graves was indicted and criminally prosecuted.  *See* Exhibit 16 (entry for

10-22-2008); *see* Exhibit 21 (page 77, lines 7-24); *see* Exhibit 36 (RFA Nos. 13-21).[11]

16.   The District Attorney's office next sent an October 29, 2008, letter to Plaintiff's attorney

confirming that the case was to be presented to the Grand Jury on November 25, 2008, and

inviting Plaintiff to attend and present testimony to the grand jury.  *See* Exhibit 22.  This letter

gave the appearance and impression that nothing had yet been presented to the grand jury, and

that the case would not be presented until November 25, 2008.  Plaintiff did not yet know that

Ballard and Kathy Graves both provided testimony to the Grand Jury.  Renee Mueller then lost

the position of Washington County District Attorney in the November 2008 election, and was

replaced by William Parham ("Parham").

17.   Through the efforts and testimony of Kathy Graves and Scott Ballard, and with the help

of Washington County and its employees, Michael Graves was indicted on January 15, 2009.

*See* Exhibit 23.  Through discovery in this case, multiple different versions of the same criminal

indictment surfaced.  *See* Exhibit 24.[12]  None of the multiple versions of the criminal indictments

were accurate in that they did not identify Scott Ballard as a witness, yet he testified and

presented evidence that was used to indict and prosecute Michael Graves.  *See* Exhibit 21 (page

77, lines 7-24); Exhibit 36 (RFA Nos. 13, 14, 16 and 30).  Kathy Graves presented testimony to

the Grand Jury that was used to indict and criminally prosecute Michael Graves.  *See* Exhibits 23

and 24.

18.   Michael Graves proceeded to defend himself against the felony criminal prosecution for

---

[11] It is believed that Ballard was helping Kathy Graves to also present testimony to the grand jury
to ensure the indictment and criminal prosecution of Michael Graves; but Kathy Graves has
refused to provide any discovery responses or present for deposition, and Ballard cannot
remember his testimony to the Grand Jury, and cannot remember who all was present or
testified.  *See* Exhibit 21, page 77, lines 7-24.
[12] Note the different order the witnesses identified on the Criminal Indictment are listed.

interference with child custody, despite him being the only "parent" of the minor child NJG. Twenty-two days after being indicted, Ballard and Kathy Graves filed a false "Inventory and Appraisement" with the divorce court on February 6, 2009.  This document was notarized by acting Washington County District Attorney Parham, who had recently obtained the indictment of Michael Graves, and whose office was prosecuting him for felony charges of interference with child custody.  *See* Exhibit 25 (page 4).  Michael Graves incurred over $145,000.00 in legal fees to defend against the felony criminal prosecution, while concurrently defending against the false claims made by Ballard and Kathy Graves in the divorce proceedings.  *See* Exhibit 26. Additionally, through the use of false filings and testimony, in combination with procuring and initiating the criminal prosecutions, Michael Graves was required to pay an additional $29,000.00 to Kathy Graves; lost approximately $150,500.00 on the required sale of real property; lost $32,000.00 on the sale of personal property that was ordered; and incurred other damages.  *See* Exhibit 26.

19.   In pretrial filings in the divorce proceedings, it became evident why Ballard and Kathy Graves were intent on having Michael Graves criminally prosecuted, and how they could utilize those criminal proceedings to their advantage.  Ballard and Kathy Graves listed the Criminal Indictment of Michael Graves as one of their exhibits for trial in the divorce.  *See* Exhibit 28 (proposed exhibit 18 in that document).  In the divorce proceedings, Ballard and Kathy Graves falsely claimed that she barely had enough money to live on and survive (*see* Exhibit 27, page 16, lines 16-17), and were able to leverage their position in the divorce proceedings through utilization of the malicious criminal prosecution of Michael Graves.  *See* Exhibit 36 (RFA Nos. 20 and 21).

20.   However, when Michael Graves' counsel discovered that Ballard and Kathy Graves (with

the help of Washington County and its employees that had close relationships and friendships with Ballard) had manipulated the legal system by utilizing criminal charges and proceedings to gain strategic advantage in the divorce proceedings between her and Michael Graves (*see also*, Exhibit 36, RFA Nos. 20 and 21), Ballard proposed resolution of the divorce through settlement, with Kathy Graves waiving all interest to the minor child NJG.   *See* Exhibit 29, item 1.   In particular, it was discovered that Kathy Graves had over $142,000.00 in funds from other business sources that were not disclosed; payments that were delayed through Kathy Grave's efforts; payments and finances that were misrepresented to the Court; and Kathy Grave's financial position which was falsely testified to under oath.   *See* Exhibit 30 (includes chart of monthly expenditures from Kathy Grave's; funds deposited into the account; and testimony presented to the Court).

21.   Michael Graves was forced to give up substantial amounts of property and funds in order to fight for his minor daughter, and to fight for his freedom and civil liberties against the malicious criminal prosecutions.   *See* Exhibit 26.   Despite the conclusion of the divorce proceedings in Spring of 2009, the felony criminal prosecution of Michael Graves continued in Washington County for another year.   On June 17, 2010, the felony charge of interference with child custody was dismissed for the reason that the case was "transferred" to the Washington County Attorney's office for further prosecution.   *See* Exhibit 31.   Michael Graves then continued to defend against misdemeanor charges of "False Report to a Peace Officer."   *See* Exhibit 32 (pages 12-18 of that exhibit, which are the documents behind "records" tabbed page that are numbered documents 1-6).   According to the Washington County records, the misdemeanor charges purported to be dismissed on December 22, 2010.   *See* Exhibit 32, last page numbered 6).   The dismissal was based on the stated reason that the Washington County

Attorney's office "cannot prove all elements" for the criminal charge for which Michael Graves was prosecuted.  Washington County continued to prosecute Michael Graves for almost two months after the date of the dismissal, until he was notified of the dismissal of those charges on February 11, 2011.  *See* Exhibit 33 (telefax transmittal at top of page).

22.  In discovery, Michael Graves learned that Kathy Graves (through the help of Scott Ballard) brought criminal complaints of theft that were prosecuted for some time by Washington County employees, until they were also dismissed.  *See* Exhibit 34.  All of the criminal prosecutions were initiated and facilitated by Kathy Graves and/or Scott Ballard, and were pursued and accomplished through the use and participation of Washington County employees, agents and representatives.  Each and every criminal prosecution necessarily included the pursuit of the criminal claims, the investigation of the criminal complaints, and the prosecution of the criminal charges using Washington County employees.  *See* Exhibit 35; *see* Exhibit 14 for involvement of Sheriff's Office personnel.

23.  During the prosecution of the misdemeanor criminal charges against Michael Graves by Washington County and its employees in the Washington County Attorney's office, the divorce files were taken from their usual place of storage in the Washington County Clerk's office, and were locked up by Judge Reue in his office, according to his coordinator.  *See* Exhibit 38.  This effectively prevented Plaintiff from using the files in order to defend against the false criminal charges, and to get them dismissed timely.  Additionally, efforts were made by Plaintiff's counsel to obtain the benefits of Texas law to obtain an abstract of judgment on the amounts awarded to him in the final decree of divorce, but the Washington County personnel resisted those actions to obtain the abstract of judgment, and Plaintiff was denied this benefit.  *See* Exhibit 38.

13

24.  On July 1, 2008, Plaintiff was also ordered to be detained and not allowed to leave the Washington County Courthouse property, and held by the Washington County Sheriff's deputies for a number of hours.  All of this occurred off the record, without a Court Order, and without any proper cause or violation of any Court order or mandate.  *See* Exhibit 26.

## C. LEGAL AUTHORITIES ON SUMMARY JUDGMENT

25.  Summary judgment is proper in a case in which there is no genuine dispute of material fact.  Fed. R. Civ. P. 56(a); *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A plaintiff moving for summary judgment satisfies its burden by submitting summary-judgment proof that establishes all elements of its claim as a matter of law. *San Pedro v. United States*, 79 F.3d 1065, 1068 (11th Cir. 1996).  Plaintiff must show that no reasonable trier of fact could find other than for plaintiff.  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).

### i. Breach of Contract Claims

26.  Plaintiff's claims for breach of contract against Kathy Graves are established as a matter of law based on Requests for Admissions that are deemed admitted.  If a responding party does not timely serve answers or objections to requests for admissions, the matters in the requests are admitted as a matter of law.  FED. R. CIV. P. 36(a)(3); *Gabbanelli Accordians & Imps., L.L.C. v. Ditta Gabbanelli Abaldo di Elio Gabbanelli*, 575 F.3d 693, 696 (7th Cir. 2009); *Sonoda v. Cabrera*, 255 F.3d 1035, 1039 (9th Cir. 2001).  A matter admitted under deemed admissions is conclusively established.  FED. R. CIV. P. 36(b); *U.S. v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987).  A specific request for admission, once admitted or deemed, is a judicial admission, and a party cannot introduce testimony to controvert it.  *American Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991).

27.     Plaintiff served requests for admissions on Kathy Graves on February 29, 2011.  *See* Exhibit 36.  Kathy Graves received the requests for admissions on March 13, 2012, via certified mail, with return receipt requested.  *See* Exhibit 37.  In the requests for admissions, Kathy Graves admitted the following matters, which she cannot now controvert:  that false claims and pleadings were filed with the divorce court (RFA Nos. 3-5, 10, 11); that she failed to make payment to Plaintiff concerning the amounts ordered by the Court in the Final Decree of Divorce (RFA Nos. 6-8); that she received notice and demand for payment for amounts owed to Plaintiff (RFA Nos. 9, 25 and 26); that she breached the agreement that required Kathy Graves to pay to Michael Graves at least $86,891.83 (RFA No. 23); that she owes to Michael Graves the sum of at least $86,891.83 (RFA No. 24); and that she continues to fail and refuse to pay the amounts owed to Michael Graves despite proper demand being made on her (RFA Nos. 27 and 28).  Accordingly, summary judgment for the amount of $86,891.83 against Kathy Graves and in favor of Michael Graves on the breach of contract claims is appropriate as a matter of law.

### ii.  Malicious Prosecution Claims

28.     The elements of malicious criminal prosecution, and references to the evidence to substantiate each such element, are as follows:  (1) a criminal prosecution was commenced against Plaintiff (*see* Exhibit ); (2) the defendant initiated or procured the prosecution (*see* Exhibits 13-18; *see* Exhibit 36, RFA Nos. 13-18); (3) the prosecution was terminated in Plaintiff's favor (*see* Exhibits 31 and 33); (4) the Plaintiff was innocent of the charge (*see* Exhibits 26, 31 and 33); (5) the Defendant did not have probable cause to initiate or procure the prosecution (*see* Exhibit 36, RFA No. 70); (6) the Defendant acted with malice (*see* evidence establishing multiple criminal complaints and charges brought; false pleadings filed; financial gain from procuring the criminal charges; along with Exhibit 36, RFA Nos. 20 and 21 showing

the purpose was to gain improper, strategic advantage in the divorce proceedings); and (7) the Plaintiff suffered damages as a result of the prosecution (*see* Exhibit 26).

29.    Additionally, Kathy Graves admitted that she initiated and filed criminal charges against Michael Graves (Exhibit 36, RFA Nos. 13 and 14); that she was prepared on what to say and how to testify to the Grand Jury by her attorney, Scott Ballard (Exhibit 36, RFA Nos. 15-18); and that Scott Ballard used his personal friendship with the criminal authorities to have Michael Graves criminally prosecuted (Exhibit 36, RFA No. 19).  The elements for malicious criminal prosecution are met as a matter of law.  The criminal prosecutions were terminated in Plaintiff's favor (i.e., dismissed) and Plaintiff was innocent of the charges.  Plaintiff suffered damages in the form of additional legal fees and costs; losses through the strategic advantage gained in the divorce proceedings; and mental anguish due to the potential for or risk of loss of his freedom and civil liberties, his job and occupation, and his daughter.  Accordingly, summary judgment in favor of Michael Graves and against Kathy Graves is appropriate.

30.    Because there are no genuine disputes of material fact on any element of the claims for breach of contract and malicious prosecution, Plaintiff respectfully submits that he is entitled to summary judgment as a matter of law.

### D. ATTORNEY FEES

31.    Plaintiff is entitled to attorney fees incurred in prosecuting this suit. The affidavit of Plaintiff's attorney, included as Exhibit 39, establishes that Plaintiff is entitled to attorneys' fees in the amount of approximately $153,000.00 as a matter of law.  However, Plaintiff requests the opportunity to present more specific information, evidence, and other items in support of the lodestar factors and other factors for the Court to consider should the Court grant summary judgment on the claims at issue herein.

32.    Plaintiff asks the Court to take judicial notice of the usual and customary attorney fees in this district, as well as the statutory entitlement to legal fees for breach of contract claims pursuant to Chapter 38 of the Texas Civil Practices & Remedies Code, and other legal authorities.

## E. CONCLUSION

33.    For the reasons and based on the evidence referenced herein, Plaintiff asks the Court to grant this motion and render a partial summary judgment in Plaintiff's favor against Defendant Kathy Graves.

Respectfully submitted,


 /s/ *Eddie M. Krenek*                           
Eddie M. Krenek
Attorney-In-Charge
State Bar No. 11724980
Tricia K. Thompson
State Bar No. 24031324
KRENEK LAW OFFICES
419 Mason Park Blvd.
Katy, Texas  77450
Telephone:     281-578-7711
Telefax:          281-578-8988

Counsel for Plaintiff Michael Graves

17

## CERTIFICATE OF SERVICE

This is to certify that on June 29, 2012, a true and correct copy of the foregoing was served on all counsel of record and on pro se parties as follows:

Charles Herring, Jr.                                    *Via CM/ECF Electronic Filing*
Jess M. Irwin, III
HERRING & IRWIN, L.L.P.
701 Brazos Street, Suite 500
Austin, Texas  78701
*Attorneys for Defendant Patrick Scott Ballard and Defendant Noe & Ballard, PLLC*

J. Eric Magee                                           *Via CM/ECF Electronic Filing*
ALLISON, BASS & ASSOCIATES, LLP
A.O. Watson House
402 West 12th Street
Austin, Texas  78701
*Attorneys for Defendant Washington County*

Ms. Kathy Lynn Gaskamp Graves, *Pro Se*      ***Certified Mail, Return Receipt Requested***
2527 W. LaCrosse Ave.
Spokane, Washington  99205


                                          /s/ *Eddie M. Krenek*
                                          Eddie M. Krenek