**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

MICHAEL D. GRAVES                            §
                                             §
v.                                           §            A-11-CA-548 LY
                                             §
KATHY LYNN GASKAMP, et al.                   §

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are six motions for summary judgment and the associated responses, replies,

and supplements:

   (1)    Defendants Patrick Scott Ballard and Noe & Ballard, PLLC's Motion for Summary
          Judgment (Clerk's Doc. No. 57); Plaintiff Michael Graves's Response in Opposition
          (Clerk's Doc. No. 72); Plaintiff Michael Graves's Supplement to Response (Clerk's
          Doc. No. 75); Defendants Patrick Scott Ballard and Noe & Ballard, PLLC's Reply
          (Clerk's Doc. No. 76);

   (2)    Defendant Washington County's Motion for Summary Judgment as to Crossclaimant
          Kathy Gaskamp Graves (Clerk's Doc. No. 61);

   (3)    Defendant Washington County's Motion for Summary Judgment (Clerk's Doc. No.
          62); Plaintiff Michael Graves's Response in Opposition (Clerk's Doc. No. 73);
          Defendant Washington County's Reply (Clerk's Doc. No. 79);

   (4)    Plaintiff Michael Graves's Motion for Summary Judgment Against Defendant Kathy
          Gaskamp Graves (Clerk's Doc. No. 63);

   (5)    Plaintiff Michael Graves's Motion for Summary Judgment on Kathy Gaskamp
          Graves's Counterclaims (Clerk's Doc. No. 64); and

   (6)    Plaintiff Michael Graves's Motion for Summary Judgment Against Defendants
          Patrick Scott Ballard and Noe & Ballard, PLLC (Clerk's Doc. No. 66); Defendants
          Patrick Scott Ballard and Noe & Ballard, PLLC's Response (Clerk's Doc. No. 71).[1]

_____

[1]There are several subsidiary motions also pending.  On July 27, Plaintiff sought leave to
supplement his response to the motions for summary judgment and to exceed the page limitation

The District Court referred the above-motions to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.  Of the six motions for summary judgment, three are unopposed.  Kathy Graves Gaskamp has not responded to any of the three summary judgment motions filed against her, and the deadline for her responses passed several weeks ago.  In that time, she has communicated with the Court, but she has not indicated that she would respond to the pending motions.

## I.  FACTUAL BACKGROUND

This case stems from a messy divorce and custody battle.  The divorce was so acrimonious that both Michael Graves ("Plaintiff" or "Graves") and his ex-wife, Kathy Gaskamp Graves ("Gaskamp"), were arrested for interfering with the custody of Michael Graves's adopted daughter.  Gaskamp was arrested on July 18, 2008, and Graves on January 22, 2009.  Each was the complainant in the charges against the other.  The remaining parties in this case—Washington County, Patrick Scott Ballard ("Ballard"), and Noe & Ballard, PLLC—are tangentially related to the divorce or the arrests.  Ballard and his firm represented Gaskamp during the divorce, and Graves contends that they played a part in Graves' arrest for interference with child custody.  Graves also alleges that Gaskamp

_____

Clerk's Doc. No. 80.  The Court GRANTS this motion.  Plaintiff also filed a Motion to Reconsider Ruling on Plaintiff's Motions to Compel (Clerk's Doc. No. 86), then filed a Partial Withdrawal of that motion.  Clerk's Doc. No. 91.  In the withdrawal motion Graves states that the "issue concerning production of the grand jury testimony transcripts is uncertain" and asks to reserve the issue for later determination.  Clerk's Doc. No. 91 at 1–2.  Taking these motions together, Plaintiff has not asked the Court to determine any discovery issues for the time being.  As such, the Court will GRANT Plaintiff's Motion to Partially Withdraw his Motion to Reconsider, and DENY any remaining issue in the Motion to Reconsider WITHOUT PREJUDICE to being reurged.

and Washington County should be liable for his arrest under a myriad of legal theories, including the Civil Rights Act, 42 U.S.C. § 1983, malicious prosecution, conspiracy to violate his constitutional rights and negligence.

In her cross-complaint, Gaskamp sues Michael D. Graves, and Washington County, requesting relief "for the deprivation of [her] constitutional rights, malicious prosecution, failure to properly vet an adopting party, and wrongful arrest."  Clerk's Doc. No. 28 at 2.  As previously noted, Gaskamp has not responded to the motions for summary judgment filed against her.[2]

## II.  PROCEDURAL BACKGROUND

Graves filed this case on June 15, 2011, in the United States District Court for the Southern District of Texas, suing Gaskamp, Ballard, Noe & Ballard, PLLC, and Washington County for violating his constitutional rights.  Because most of the allegations involve conduct occurring in Washington County, Texas, which is part of the Austin Division of the Western District of Texas, U.S. District Judge Nancy F. Atlas transferred the case to this Court on June 27, 2011.  Gaskamp filed her answer on August 31, 2011 (Clerk's Doc. No. 22).  She also filed a separate § 1983 suit against Gaskamp in this Court on that same date.  (Clerk's Doc. No. 28; Case 11-CV-824-LY).  The Court determined the complaint filed by Gaskamp was in effect an answer and counterclaim against Plaintiff and a cross-claim against Washington County, a party named in Plaintiff's original suit

---

[2]In addition to not responding to the three motions for summary judgment, the Defendants allege that Gaskamp has also failed to meaningfully participate in discovery.  At the outset of the litigation, Gaskamp requested an attorney, but the Court denied her request.  Recently, she reiterated her request for the Court to appoint her a court-appointed attorney.  Although the Court is sympathetic to pro se litigants, as detailed in its order denying her initial request for an attorney, it cannot appoint attorneys without exceptional circumstances.  Further, Gaskamp's pro se status does not exempt her from the Federal Rules of Civil Procedure, and she cannot escape discovery requests or responses to dispositive motions simply because she does not have legal counsel.

(Clerk's Doc. No. 28).  As such, the Court ordered that the complaint filed by Gaskamp be treated as a counter and cross-claim and docketed in the instant case (Clerk's Doc. No. 27).[3]  Graves filed his First Amended Complaint on March 12, 2012 (Clerk's Doc. No. 46).  All six motions for summary judgment mentioned at the beginning of this Report and Recommendation were filed on June 29, 2012.

## III.  SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). In addition, the moving party must establish "the existence or nonexistence of enough of the essential elements of a claim and its related defenses to permit disposition of the claim as a matter of law." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  "Mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment."  *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec.*

---

[3]Gaskamp's pleading also asserted claims against three individuals or entities that were not parties to the suit (Ben Eusatchon, William Cowan, and Harris County).  The court instructed Gaskamp that she would either need to seek leave to add the three as third parties, or to file a new lawsuit against them.  She has done neither.

*Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508.  Further, a court "may not make credibility determinations" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party establishes that there are no factual issues, the burden shifts to the nonmoving party to produce evidence that a genuine issue of material fact exists for trial.  The nonmoving party must then "go beyond the pleadings," and by affidavits or other competent summary judgment evidence cite "specific facts" that show there is a genuine issue for trial.  *Celotex Corp.*, 477 U.S. at 324.  But a district court may not grant a motion for summary judgment merely because it is unopposed.  *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).

## IV.  LEGAL ANALYSIS OF FEDERAL CLAIMS

**A.      Defendants Patrick Scott Ballard and Noe & Ballard, PLLC's Motion for Summary Judgment (Clerk's Doc. No. 57)**

Defendants Ballard and Noe & Ballard, PLLC seek summary judgment on the following of Graves' claims:  Count 1 (violation of Graves's constitutional rights under § 1983 and malicious prosecution), Count 2 (negligence on the part of Noe & Ballard, PLLC) and Count 4 (conspiracy).  Ballard and Noe & Ballard, PLLC, contend that there is no evidence to support Graves's § 1983 claims because Graves has presented no evidence that Ballard and Noe & Ballard, PLLC, were state actors or acted under color of state law in connection with the events in this case, nor is there evidence of an agreement between Ballard and Noe & Ballard, PLLC, and Washington County or any other public official to commit an illegal act, or that Graves was deprived of his constitutional rights as a result of such an agreement.  *See* Clerk's Doc. No. 57 at 5.  Ballard and Noe & Ballard,

PLLC, also claim that Graves has no free-standing cause of action for malicious prosecution under state or federal law, has no evidence to support a claim for conspiracy, and no duty or evidence to support a claim for negligence on the part of Noe & Ballard, PLLC. *Id.* at 5–7. In the alternative, Ballard and Noe & Ballard, PLLC, assert that Graves' malicious prosecution claim is barred by the "qualified attorney immunity" defense or the applicable statute of limitations under Texas law. *Id.* at 7–13.

Graves responds by arguing that the summary judgment evidence demonstrates that Ballard was integrally involved in initiating criminal prosecutions against Graves. *See* Clerk's Doc. No. 72, ¶ 24. He points to deemed admissions by Defendant Gaskamp to show that Ballard used his connections and personal relationships with the employees of Washington County to facilitate the criminal prosecutions. *Id.* at ¶ 25. He also asserts that each element of his malicious prosecution claim has been shown and that Noe & Ballard, PLLC, is vicariously liable for the improper actions of its employee. *Id.* at ¶¶ 28–29. Finally, he argues that "qualified attorney immunity" would not apply to Ballard because his actions "fell far across the line of proper legal, lawful, and ethical representation on behalf of his client." *Id.* at ¶ 31. Graves contends that the statute of limitations has not run on his claims because they were filed within one year after the termination of the criminal prosecutions in his favor. *Id.* at ¶¶ 33–37.

Graves supplemented his Response on July 23, 2012, presenting the depositions of both Renee Mueller, the former District Attorney for Washington County, and Floyd Mathis, the Washington County Sheriff's Investigator. *See* Clerk's Doc. No. 75. From these depositions, he seeks to show errors concerning the investigation of his conduct, and that Washington County should

have had a policy requiring a written, signed order concerning child custody before commencing an investigation for interfering with a custody order. *Id.*

Under Count 1 of his First Amended Complaint, Graves alleges violations of his constitutional rights under § 1983 and malicious prosecution. Clerk's Doc. No. 46, ¶ 57. Additionally, Graves alleges constitutional violations deriving from his wrongful arrest. For Graves to bring a claim of malicious prosecution or false arrest under federal law, he must allege a constitutional violation. *See, e.g.*, *Price v. Roark*, 258 F.3d 364, 370 (5th Cir. 2001) ("Malicious prosecution is therefore actionable under federal law only if it deprives a plaintiff of rights guaranteed by the United States Constitution."); *Thomas v. Sams*, 734 F.2d 185, 191 (5th Cir. 1984) (recognizing a cause of action under § 1983 for false arrest because such a right "plainly enjoys such protection"); *Nesmith v. Taylor*, 715 F.2d 194, 195 (5th Cir. 1983) ("It is fundamental to our federal jurisprudence that state tort claims are not actionable under federal law; a plaintiff under § 1983 must show deprivation of a federal right."). Furthermore, the Fifth Circuit has clearly held that "malicious prosecution standing alone is no violation of the United States Constitution, and that to proceed under 42. U.S.C. § 1983 such a claim must rest upon a denial of rights secured under federal and not state law." *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003). And to obtain relief under federal law for constitutional violations, Graves must seek relief under 42 U.S.C. § 1983.

In order to succeed on a claim under § 1983 against a private party, "a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law." *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008); *see also Hernandez v. Maxwell*, 905 F.2d 94, 95 (5th Cir. 1990) (internal quotations and citations omitted). To survive a motion for summary judgment as to a private party, Plaintiff "must

present evidence that [Defendants were] acting under color of state law, such that [their] conduct was fairly attributable to the State." *Hebrew v. Houston Media Source*, 453 F. A'ppx 479, 481 (5th Cir. 2011) (internal quotation and citations omitted). "The under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotations and citations omitted).

Although the Supreme Court has employed several tests to determine whether a private actor has acted under color of state law, the test most relevant to this case is the "joint action" test.[4] *Cornish v. Correctional Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005). Under the "joint action" test, private actors may be liable for § 1983 claims if they are "a willful participant in joint action with the State or its agents." *Id.* (internal quotations and citations omitted). "Private persons, jointly engaged with state officials in the challenged action, are acting see [sic] under color of law for purposes of § 1983 actions." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980) (internal quotations omitted). A private party may be held liable under § 1983 for "conspiring with state actors to violate civil rights." *Keko v. Hingle*, 318 F.3d 639, 642 (5th Cir. 2003); *see also Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970). To prevail, "the private and the public actors must have entered into an *agreement* to commit an illegal act." *Tebo v. Tebo*, 550 F.3d 492, 496 (5th Cir. 2008) (emphasis added). "The inquiry into whether private conduct is fairly attributable to the state must be determined based on the circumstances of each case." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 242 (5th Cir. 1999). It begins by "identifying the specific conduct of which the Plaintiff complains."

---

[4]The other tests include the "public function" test, the "state compulsion" test, and the "nexus" test. For a summary of these tests, see *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 939 (1982).

*Cornish*, 402 F.3d at 550.  In reviewing Plaintiff's complaint and subsequent filings, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

After reviewing the evidence presented and construing the facts in the light most favorable to Graves, the Court finds that he has not presented material evidence supporting the conclusion that Ballard and Noe & Ballard, PLLC, were acting under the color of state law or that their actions could be fairly attributable to the state.  Rather, the evidence shows that they were private actors acting on behalf of a private citizen making a complaint of alleged criminal conduct.  As such, Ballard and Noe & Ballard, PLLC, cannot be held liable under § 1983 for their conduct.

For example, Graves states that Ballard contacted employees of Washington County to "prompt the criminal investigations and prosecutions of [Plaintiff] . . . ."  *See* Clerk's Doc. No. 72, ¶ 24.  From the evidence cited, it is difficult to see how Plaintiff reached such a conclusion.  The police report referenced by Plaintiff concerns the arrest of Defendant Gaskamp and simply notes that Ballard contacted the reporting officer, Deputy Shane Ray, to indicate that Gaskamp would like to provide a statement regarding her arrest and the case.  *See* Clerk's Doc. No. 72-14 at 4.  There is nothing to indicate that Ballard had an agreement with the employees of Washington County to violate Graves' constitutional rights.  Additionally, the teleconferences cited by Plaintiff merely provide evidence that Ballard spoke with Washington County employees.  *See* Clerk's Doc. No. 72-16 at 9–10.  The evidence does not identify *what* the parties discussed and, absent additional evidence, is far too little for the Court to infer that an agreement existed between Ballard, Noe & Ballard, PLLC, and Washington County.  It is also puzzling how Graves reached the conclusion that Ballard "obtained the help of Washington County employee Travis Fleetwood to provide select

portions of a hearing transcript to help achieve the criminal prosecution" of Plaintiff.  Clerk's Doc. No. 72, ¶ 24.  The police report indicates that Investigator Mathis and Deputy Ray received a transcript from Mr. Fleetwood.  Clerk's Doc. No. 72-14.  There is no mention of Ballard's involvement in the procurement of this transcript and no indication of an agreement between the parties to violate Plaintiff's constitutional rights.  Even though the Court, in reviewing a motion for summary judgment, reviews the facts in a light most favorable to the nonmoving party, the inference urged by Graves in this instance is completely unsupported.

Graves also relies on a letter sent by Ballard to former Washington County District Attorney Renee Mueller in which Ballard expresses that Gaskamp "expects [Graves] will be prosecuted to the fullest extent" and that the case be given the full attention of the district attorney.  *See* Clerk's Doc. No. 72-18.  Again, there is nothing to show that an agreement existed between Ballard, Noe & Ballard, PLLC, and Washington County to commit an illegal act.  Cooperation with a police investigation—even urging that one be pursued—does not show an agreement between the parties existed to violate the target's constitutional rights, particularly where it is not established that Washington County entered into such an agreement.

Other than these events, Graves relies heavily on the requests for admission served on Gaskamp, which Gaskamp did not answer, to show that an agreement existed between Ballard and Washington County employees involved in the criminal investigation of Plaintiff.  Graves' misuses the admissions, however.  "[D]eemed admissions by a party opponent cannot be used against a co-party." *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997).  Thus, Graves cannot use the requests that are deemed admitted *by Gaskamp* as evidence that Ballard had and used his relationships with Washington County employees to procure and facilitate Plaintiff's criminal prosecutions.  Even

10

assuming Ballard had a personal relationship with employees of Washington County,[5] Graves needs to prove more than this to show that the attorneys were "state actors" with regard to their representation of Gaskamp on her allegations that Graves was interfering with a child custody order.

Accordingly, it is recommended that Defendants' Motion for Summary Judgment regarding Plaintiff's claims under § 1983 (Clerk's Doc. No. 57) be granted.[6]

**B.**     **Defendant Washington County's Motion for Summary Judgment as to Crossclaimant Kathy Gaskamp Graves (Clerk's Doc. No. 61)**

In this motion, Washington County seeks summary judgment regarding the claims brought against it by Gaskamp.  In her cross-claim, Gaskamp sues Washington County, "for the deprivation of [her] constitutional rights, malicious prosecution, failure to properly vet an adopting party, and wrongful arrest."  Clerk's Doc. No. 28 at 2.  Liberally construing Gaskamp's cross-claims,[7] her allegations against Washington County amount to a claim for the deprivation of her constitutional

---

[5]Graves stresses that Ballard and Washington County District Attorney William Parham had a personal relationship through their participation on a barbeque cook-off team.  *See* Clerk's Doc. No. 72-42, ¶ 9.

[6]Given this recommendation, the Court does not reach the statute of limitations argument on this claim.  Further, given that the undersigned recommends that the district judge grant Ballard and Noe & Ballard summary judgment on Graves' malicious prosecution claim against them, this recommendation also disposes of Graves' cross motion in which he asks that the Court grant summary judgment in his favor on this same claim.  Obviously, if it is appropriate to dismiss the claim, then it is not appropriate to grant Graves summary judgment on that claim.  Accordingly, the undersigned also RECOMMENDS that the court DENY Graves' Motion for Partial Summary Judgment Against Defendants Patrick Scott Ballard and Noe & Ballard, PLLC (Clerk's Doc. No. 66).

[7] Because Gaskamp is proceeding *pro se* in the instant case, the Court construes Gaskamp's cross-claims liberally.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotations and citations omitted).

rights under § 1983, including malicious prosecution and wrongful arrest.  Washington County asserts that the Court should grant summary judgment on these claims because (1) the claims are barred by the applicable statute of limitations; (2) Gaskamp has failed to state a claim sufficient to meet the pleading standard set out in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); and (3) Gaskamp has failed to present evidence establishing Washington County's liability under § 1983.  *See* Clerk's Doc. No. 61.  Gaskamp has not responded to Washington County's motion.

       "A municipality or other local government may be liable under [§ 1983] if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation."  *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011) (internal quotations and citations omitted).  However, "under § 1983, local governments are only responsible for 'their own illegal acts.'"  *Id.* (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).  To impose liability on local governments under § 1983, plaintiffs must prove that "action pursuant to official municipal policy of some nature" caused their injury.  *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 692 (1978); *see also Duvall v. Dallas Cnty., Tex.*, 631 F.3d 203, 209 (5th Cir. 2011) ("For a municipality to be liable, the plaintiff must show that there was either an official policy or an unofficial custom, adopted by the municipality, that was the moving force behind the claimed constitutional violation.").  In other words, municipality liability under § 1983 for constitutional violations requires: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom."  *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (internal quotations

and citations omitted); *see also Bellard v. Gautreaux*, 675 F.3d 454, 462 (5th Cir. 2012); *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

Even construing her cross-claim liberally and assuming that a constitutional violation occurred, there is no summary judgment evidence that Washington County had an official policy or custom that caused the alleged violation of Gaskamp's constitutional rights. Although she describes her arrest and subsequent incarceration, Gaskamp does not identify any Washington County policy or custom that was responsible for her arrest. *See* Clerk's Doc. No. 28 at 25–27. Furthermore, while she notes that Washington County "has made major changes in how [the County] handle[s] child custody and visitation cases," this does not amount to an allegation that a Washington County policy or custom was the cause of a constitutional violation suffered by Gaskamp. *Id.* at 29. Indeed, the evidence provided by Gaskamp appears to counsel against a finding of liability as to Washington County under § 1983. For example, Gaskamp notes that when her daughter, Mollye Gray, spoke with Renee Mueller, the Washington County District Attorney at the time, Mueller commented that the district attorney's office "just did not get involved" with child custody issues. *Id.* She also stated that when Judge Roy Mays reviewed the warrant issued for her arrest, the Judge discussed the warrant with the assistant district attorney because "they usually do not become involved in child custody disagreements, especially on a Friday night." *Id.* As Gaskamp has failed to identify a Washington County policy or custom that led to the alleged violation of Gaskamp's constitutional rights, the undersigned recommends that Washington County's Motion for Summary Judgment as to Gaskamp be granted.[8]

---

[8]Given this recommendation, this R&R does not addressed Washington County's statute of limitations argument.

13

**C.      Defendant Washington County's Motion for Summary Judgment as to Plaintiff Michael Graves (Clerk's Doc. No. 62)**

Washington County seeks summary judgment on the following of Graves' claims: (1) violation of Graves' constitutional rights under § 1983 and malicious prosecution; (2) negligence on the part of Washington County; and (3) conspiracy. *See* Clerk's Doc. No. 62 at 5–6. Washington County contends that Graves' suit is barred by the applicable statute of limitations. *Id.* at 2. In the alternative, the County asserts that Graves (1) fails to state a claim against the County, (2) has not shown that a Washington County official, acting in his or her official capacity, was involved in depriving Plaintiff of his constitutional rights, (3) failed to present evidence that a Washington County policy was responsible for any constitutional violation suffered by Plaintiff and (4) has not provided evidence of any conspiracy between Washington County and the other defendants. *Id.* at 6–12. Graves' Response contends that (1) his claims are not barred by the statute of limitations because the statute of limitations did not begin to run until the criminal prosecution terminated in his favor; (2) he has adequately pled facts and circumstances which show that he suffered constitutional violations as a result of Washington County's actions; (3) Washington County could have implemented policies which would have prevented the constitutional violations he suffered; and (4) the evidence presents a genuine issue of material fact regarding the conspiracy claim against Washington County. *See* Clerk's Doc. No. 73 at 13–20.

As noted earlier, Graves supplemented his Response to include deposition testimony from former Washington County District Attorney Renee Mueller and Washington County Sheriff Investigator Floyd Mathis. *See* Clerk's Doc. No. 75. Through these depositions, Plaintiff seeks to provide evidence that (1) there was no probable cause to arrest Plaintiff and (2) the failure of Washington County to adopt a policy of requiring a signed written order before pursuing arrests for

interfering with child custody orders was responsible for the constitutional violations Plaintiff suffered. *Id.* at 2–4. In its Reply, Washington County seeks to strike Plaintiff's supplement as untimely and beyond the page limit. *See* Clerk's Doc. No. 79 at 1–2. The Court has rejected that request and has allowed the supplement to be filed. Additionally, Washington County contends that Plaintiff's evidence contains unsupported factual allegations and amounts to nothing more than conclusory allegations. *Id.* at 2–6.

As to Washington County's motion for summary judgment on Plaintiff's § 1983 claim, the law concerning whether a municipality may be held liable under § 1983 is set forth in Section IV.B of this order. The Court emphasizes that, for Plaintiff to be able to hold Washington County liable under § 1983, Graves must identify: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom." *Valle*, 613 F.3d at 542.

Under the first prong, "the existence of a policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Id.* Alternatively, Plaintiff may demonstrate that a "persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). To satisfy the second prong, "actual or constructive knowledge of a custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Valle*, 613 F.3d at 542. For the third prong, Plaintiff "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory

15

right will follow the decision." *Valle*, 613 F.3d at 542. "Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence." *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009). Furthermore, although "the municipal policy-maker's failure to adopt a precaution can be the basis for § 1983 liability, such omission must amount to an intentional choice, not merely an unintentionally negligent oversight." *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992); *see also Evans v. City of Marlin, Tex.*, 986 F.2d 104, 108 (5th Cir. 1993). "A failure to adopt a policy rises to the level of deliberate indifference when it is obvious that the likely consequences of not adopting a policy will be a deprivation of civil rights." *Evans*, 986 F.2d at 108 (internal quotations and citations omitted).

Even viewing the facts in the light most favorable to Graves, the Court finds he has failed to show (1) that Washington County's failure to adopt certain policies was the result of an intentional choice or (2) that the County's failure to adopt a policy rises to the level of "deliberate indifference."[9] First, Plaintiff provides no material evidence indicating that Washington County's failure to adopt the suggested policies was the result of an intentional choice by the County. For the failure to be intentional, there must be some evidence that the County was aware of a need for the policy and made a conscious choice not to adopt one. Graves points to no such evidence. In fact, "[p]roof of deliberate indifference normally requires a plaintiff to show a pattern of violations . . . ." *Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010). *See also Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (emphasizing that a pattern of similar constitutional violations is ordinarily necessary to demonstrate deliberate indifference and that without such notice, decisionmakers cannot be said to

---

[9] For a listing of the policies Plaintiff believes Washington County should have adopted, see Plaintiff's First Amended Complaint, ¶ 64.

16

have deliberately chosen a particular course of action or policy). Without any evidence that similar problems had arisen before, Graves simply cannot demonstrate that Washington County was "deliberately indifferent" in not adopting the policies he advocates.

The undersigned therefore RECOMMENDS that summary judgment be granted to Washington County as to Plaintiff's § 1983 claims.

**D.     Plaintiff's Motion for Partial Summary Judgment Against Kathy Lynn Gaskamp Graves (Clerk's Doc. No. 63)**

Graves seeks summary judgment against Gaskamp on Graves' breach of contract and his malicious prosecution claims (Clerk's Doc. No. 63 at 2). He asserts that summary judgment is appropriate on these claims because he has established the requisite elements for both claims as a result of Gaskamp's failure to respond to Plaintiff's First Requests for Admissions. To support his motion for summary judgment, Plaintiff cites extensively his First Requests for Admissions (Clerk's Doc. No. 63-36). Fed. R. Civ. P. 36(a) "allows litigants to request admissions as to a broad range of matters, including ultimate facts, as well as applications of law to fact." *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001). Plaintiff claims his requests are now admitted as a matter of law and cannot be controverted by Gaskamp (Clerk's Doc. Nos. 63; 63-36). As of September 24, 2012, Gaskamp has not responded to this motion for summary judgment.[10]

---

[10]The Court notes that summary judgment may not be granted solely because there is no response. Graves must still establish that he is entitled to judgment as a matter of law. As the Fifth Circuit made clear in *Hetzel v. Bethlehem Steel Corp.*,

> [A] motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule. The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not rant the motion, regardless of whether any response was filed.

50 F.3d 360, 362 n.3 (5th Cir. 1995).

To succeed on his malicious prosecution claim against Gaskamp, Plaintiff must prove the following: (1) a criminal proceeding was commenced against the plaintiff; (2) the prosecution was caused by the defendant or with his or her aid; (3) the proceeding terminated in plaintiff's favor; (4) the plaintiff was innocent; (5) the defendant acted without probable cause; (6) the defendant acted with malice; and (7) the criminal proceeding damaged the plaintiff. *Pete v. Metcalfe*, 8 F.3d 214, 219 (5th Cir. 1993). Furthermore, as set out in Section IV.A of this order, a private party cannot be held liable under § 1983 unless that party has acted under the color of state law. *Sullivan*, 526 U.S. at 50. Because Gaskamp is a private party, Plaintiff must also prove that Gaskamp acted as "a willful participant in *joint* action with the State or its agents." *Cornish*, 402 F.3d at 550 (emphasis added). For Gaskamp to be liable under § 1983, "the private and the public actors must have entered into an *agreement* to commit an illegal act." *Tebo*, 550 F.3d at 496 (emphasis added).

To prevail on this motion with regard to the § 1983 claim, Graves must show that Gaskamp is subject to suit under § 1983 as a private party. After reviewing Plaintiff's First Request for Admissions as well as the evidence submitted, the Court finds that Plaintiff has failed to provide sufficient evidence to raise a jury question on this issue. In his motion, Plaintiff does not address whether Gaskamp, a private party, was a "willful participant in joint action with the State or its agents." *Cornish*, 402 F.3d at 550. Furthermore, Plaintiff has not presented material evidence indicating that any state actor improperly cooperated with Gaskamp.

Graves appears to contend that as a result of Gaskamp's failure to respond to Plaintiff's First Requests for Admissions, Gaskamp has admitted conspiring with Defendants Ballard, Noe & Ballard, PLLC, and Washington County to maliciously prosecute Graves. *See* Clerk's Doc. No. 63-36 at 11–12, ¶¶ 73–76, 84, 92. However, simply showing that one party agreed to commit an act is

18

not sufficient to prove that the other parties also agreed to that act. Because it was only Gaskamp who failed to respond to the admissions, Gaskamp's deemed admissions cannot be used against any of the other defendants, including Washington County. *Becerra*, 105 F.3d at 1048. Thus, even if the Court accepts the deemed admissions, such admissions cannot be used to show that Washington County entered into an agreement with Gaskamp to commit an illegal act, which is essential to any claim that Gaskamp was a state actor (or conspired with one) under § 1983.

Aside from the admissions, Graves presents little, if any, evidence to support his motion for summary judgment as to Gaskamp. In his recitation of the facts, Graves notes several instances where he believes improper cooperation occurred between Defendants to have him prosecuted. *See* Clerk's Doc. No. 63 at 7–10, ¶¶ 12–17. Yet most of these events did not involve Gaskamp. For example, it is not alleged that Gaskamp met with Judge Reue, *see id.* at 7, ¶ 12, nor is it claimed that Gaskamp sent the letter seeking prosecution of Graves to District Attorney Renee Mueller. *Id.* at 9, ¶ 14. Of the events involving Gaskamp, the Court does not find these events sufficient to raise a jury question as to whether Gaskamp acted under the color of state law. The statement Gaskamp provided to Washington County Sheriff's Investigator Floyd Mathis focused on Gaskamp's arrest, not Graves's. *See* Clerk's Doc. No. 63-17. Besides these pieces of evidence, Plaintiff relies on conclusory allegations, which are insufficient to support his motion for summary judgment. *See, e.g.*, Clerk's Doc. No. 63 at 7, ¶ 12 ("Scott Ballard and Kathy Graves step up their efforts to initiate and facilitate multiple criminal prosecutions of Michael Graves."). Therefore, the Court finds that

that Gaskamp, as a private party, is not subject to suit under § 1983, and Graves is therefore not entitled to judgment against Gaskamp on his federal malicious prosecution claim.[11]

**E.     Graves Motion for Summary Judgment as to Kathy Lynn Gaskamp Graves's Counterclaims (Clerk's Doc. No. 64)**

Graves also seeks summary regarding Gaskamp's counterclaims that Graves violated Gaskamp's constitutional rights under § 1983, and Graves committed malicious prosecution against Gaskamp.  Graves argues that summary judgment is appropriate because Gaskamp cannot establish that he violated her constitutional rights and there is no evidence to support a cause of action for malicious prosecution under Texas law (Clerk's Doc. No. 64 at 9–12).  Gaskamp has not responded to this motion.

In considering a motion for summary judgment where the nonmoving party "bears the burden of proof at trial, the moving party may demonstrate that it is entitled to summary judgment by . . . pointing out to the district court the absence of evidence necessary to support the nonmoving party's case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *see also Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 544 (5th Cir. 2005).  The law concerning whether a private party may be held liable under § 1983 has already been set forth in Section IV.A. of this order.  To prevail on her claim against a private party under § 1983, Gaskamp must show that

---

[11]As noted previously, Gaskamp has not filed any pleadings related to the summary judgment issues.  However, given the conclusion that Gaskamp cannot be considered a state actor under § 1983, it would be appropriate to not only deny Graves' motion for summary judgment in his favor—as recommended above—but to go a step further and dispose of Graves' § 1983 against Gaskamp, as that claim cannot possibly succeed.  This requires that the Court act *sua sponte*. because Gaskamp has not filed a motion for summary judgment.  But given that the issues have been exhaustively briefed, that Gaskamp is proceeding pro se, and that, if left pending, Graves § 1983 claim against Gaskamp would be the only federal law claim remaining, the Court recommends that the district judge dispose of Graves' § 1983 claim against Gaskamp *sua sponte.*

Plaintiff acted under the color of state law.  Even construing Gaskamp's pleadings liberally,[12] the Court is unable to find any evidence suggesting Graves was a "willful participant in joint action with the State or its agents" based on the record and evidence presented.  *Cornish*, 402 F.3d at 550. Construing the facts in her favor, Gaskamp cannot succeed on her § 1983 counterclaims against Graves as she has not shown the state action requirement necessary to sue a private party under § 1983.  As such, it is recommended that Graves's Motion for Summary Judgment as to Gaskamp's § 1983 counterclaims be granted.

## V.  PENDENT JURISDICTION AND STATE LAW CLAIMS

Each of the motions before the Court also address the pendent state law claims brought against them.  These claims include state-law claims of malicious prosecution, negligence, conspiracy, and breach of contract.  Pendent jurisdiction "gives the court *discretion* to exercise jurisdiction over state-law claims when: (1) federal question jurisdiction is proper, and (2) the state-law claims derive from a common nucleus of operative facts." *Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214, 221 (5th Cir. 2012) (emphasis added).  In other words, if "a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then . . . there is power in federal courts to hear the whole." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). However, as the Supreme Court further counseled in *Gibbs*:

> [Pendent jurisdiction] need not be exercised in every case in which it is found to exist.  It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.  Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them.

---

[12] *See supra* note 7.

*Id.* at 726 (internal quotations and citations omitted).  Additionally, the Supreme Court has given

clear guidance to the district courts in determining whether to exercise pendent jurisdiction over

state-law claims.

> Under *Gibbs*, a federal court should consider and weigh in each case, and at every
> stage of litigation, the values of judicial economy, convenience, fairness, and comity
> in order to decide whether to exercise jurisdiction over a case brought in that court
> involving pendent state-law claims. When the balance of these factors indicates that
> a case properly belongs in state court, . . . the federal court should decline the
> exercise of jurisdiction by dismissing the case without prejudice.

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  Additionally, the Supreme Court has

also recognized that:

> in the usual case in which all federal-law claims are eliminated before trial, the
> balance of factors to be considered under the pendent jurisdiction doctrine—judicial
> economy, convenience, fairness, and comity—will point toward declining to exercise
> jurisdiction over the remaining state-law claims.

*Cohill*, 484 U.S. at 350 n.7.

Furthermore, it has long been recognized that "the federal courts are an inappropriate forum

for the negotiation and resolution of domestic disputes."  *Cook v. Winters*, 645 F.Supp. 158, 159

(S.D. Tex. 1986) (citing *Barber v. Barber*, 62 U.S. (21 How.) 582, 584 (1858)); *see also Goins v.

Goins*, 777 F.2d 1059, 1061 (5th Cir. 1985) ("Federal courts traditionally decline to hear cases

involving the subject matter of domestic relations . . . .  A federal court may abstain from hearing

such a case even if the case also involves ordinary tort or contract claims.").  It is clear that the state-

law claims of malicious prosecution, negligence, conspiracy, and breach of contract against

Defendants arise out of a conflict between Graves and Gaskamp as a result of their divorce.

Furthermore, the concepts of comity and judicial economy counsel the Court to leave these issues

22

for resolution in state court, where the divorce decree and custody issues between Graves and Gaskamp were first decided.

If the district judge accepts the recommendations above with regard to the federal law claims, the only claims remaining in this case would be the state claims. Based on the principles articulated above, the undersigned recommends that the district judge decline to exercise its pendent jurisdiction over the state-law claims, and dismiss all of those claims without prejudice to being re-filed in state court. In summary, it is recommended that the District Court restrict its consideration of the issues to the federal questions in this case and limit its ruling to the claims brought under § 1983, leaving the remaining state-law claims to the state courts for determination.

## VI.  RECOMMENDATION

In accordance with the preceding analysis, the Court therefore RECOMMENDS that the District Judge GRANT IN PART AND DENY IN PART Defendants Patrick Scott Ballard and Noe & Ballard, PLLC's Motion for Summary Judgment (Clerk's Doc. No. 57). The District Judge should GRANT Defendants Motion for Summary Judgment with respect to Defendants' federal claims under § 1983 and DENY Defendants' Motion for Summary Judgment with respect to Defendants' state law claims.

The Court further RECOMMENDS that the District Judge GRANT IN PART AND DENY IN PART Defendant Washington County's Motion for Summary Judgment as to Crossclaimant Kathy Gaskamp Graves (Clerk's Doc. No. 61). The District Judge should GRANT Washington County's Motion for Summary Judgment with respect to its federal claims under § 1983 and DENY Washington County's Motion for Summary Judgment with respect to its state law claims.

The undersigned further RECOMMENDS that the District Judge GRANT IN PART AND DENY IN PART Defendant Washington County's Motion for Summary Judgment as to Plaintiff Michael Graves (Clerk's Doc. No. 62).  The District Judge should GRANT Washington County's Motion for Summary Judgment with respect to its federal claims under § 1983 and DENY Washington County's Motion for Summary Judgment with respect to its state law claims.

The Court further RECOMMENDS that the District Judge DENY IN FULL Plaintiff's Motion for Summary Judgment as to Defendant Kathy Gaskamp Graves (Clerk's Doc. No. 63).

The undersigned further RECOMMENDS that the District Judge GRANT IN PART AND DENY IN PART Plaintiff's Motion for Summary Judgment as to Defendant Kathy Gaskamp Graves's Counterclaims Against Plaintiff (Clerk's Doc. No. 64).  The District Judge should GRANT Plaintiff's Motion for Summary Judgment with respect to his federal claims under § 1983 and DENY Plaintiff's Motion for Summary Judgment with respect to his state law claims

The Court further RECOMMENDS that the District Judge DENY IN FULL Plaintiff's Motion for Partial Summary Judgment as to Defendants Patrick Scott Ballard and Noe & Ballard, PLLC (Clerk's Doc. No. 66).

FINALLY, IT IS RECOMMENDED that the District Judge DISMISS WITHOUT PREJUDICE all remaining state law claims.

## VII. WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 28th day of September, 2012.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE